**STATE of Missouri, Plaintiff-Respondent,**

v.

**Mark Gerald VAN DOREN, Defendant-Appellant.**

**No. 45951.**

Missouri Court of Appeals, Eastern District, Division One.

Aug. 16, 1983.

Motion For Rehearing/Transfer to Supreme Court Denied Sept. 15, 1983.

Application to Transfer Denied Oct. 18, 1983.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., St. Louis, for plaintiff-respondent.

C. Clifford Schwartz, St. Louis, for defendant-appellant.

SIMON, Presiding Judge.

Appellant, Mark Van Doren (Van Doren), appeals from his convictions on the following: Count I—Burglary in the First Degree § 569.160; Count II—Forcible Rape § 566.-030; Count III—Forcible Sodomy § 566.060 and Count IV—Attempted Burglary § 564.-011. The acts composing Counts I, II, and III occurred on December 14, 1980, while the attempted burglary occurred on December 20, 1980. All the acts occurred in St. Louis County and were tried together.

The convictions were entered following a jury verdict in the St. Louis County Circuit Court. Van Doren was sentenced to serve a term of twenty years. It is from this sentence that he appeals. We affirm.

On appeal, Van Doren contends the trial court erred by: (1) submitting a verdict director on the attempted burglary charge that failed to define burglary; (2) failing to define the phrase "serious physical injury" as used in the definitional instruction; (3) submitting the burglary charge and the rape and sodomy charges, thereby subjecting him to "double jeopardy"; (4) permitting testimony that he refused to give a written statement at the time of his arrest; and (5) failing to sustain motions to limit or exclude testimony of witnesses pertaining to statements made by the victim after the commission of the rape as they were hearsay and prejudicial.

■ On appeal, the evidence and its reasonable inferences shall be examined in a light most favorable to the state; all contrary evidence will be disregarded unless it supports the verdict. *State v. Arnold,* 566 S.W.2d 185, 187 (Mo. banc 1978).

Applying this standard, the facts of the case are as follows: The victim, who is divorced, resides with her 11 year old son, in St. Louis County. She testified that on the evening of December 13, 1980, she had attended her employer's Christmas party. She had taken her son to her mother's house to remain there overnight. She left the party at 1:30 a.m. on December 14, 1980 and went directly to her home. After putting on her nightgown, she fell asleep while reading on the living room couch between 2:00–2:30 a.m.

Shortly thereafter, she was awakened by a man with his hand over her mouth telling her to perform oral sodomy or he would kill her. She felt a knife at her throat; the man was on the couch, straddled atop her. He ordered her into the bedroom, holding his hand on her shoulder with the knife at her throat as they went to the bedroom. He told her if she did not remove her nightgown, he would tear it off, so she complied. He told her to lay down on the bed. She did and he forced her legs apart with his legs while still holding the knife at her throat and had sexual intercourse with her.

The intruder wanted a cigarette. The victim replied she had some in the kitchen, so he accompanied her to the kitchen with his hand on her shoulder and the knife still in his hand. Once in the kitchen, he asked for a beer. She went to the refrigerator to get a beer, and the refrigerator light and light coming from the backyard gaslight enabled her to see her attacker, who she identified as Van Doren.

Van Doren remained in the victim's home for several hours, continually displaying the

knife, holding it to her throat, successfully forcing her to engage in acts of sexual intercourse and oral sodomy. It was after sunrise when he left, providing sufficient lighting for her to observe Van Doren.

After Van Doren left, the victim did not call the police to report the rape. She was afraid to call the police and concerned what her son and neighbors would think. Later that day, she talked on the phone to her friend and implied that she had been raped. That evening, another friend phoned her. She told her someone had broken into her home and "the worst possible thing that could happen, happened." Her friend gave her the number of a "Rape" hot line, which she called the same day and told the counselor that she had been raped.

That same day the victim found her basement window had been broken out. She put plastic over it and rigged bedsprings on a hook behind the window so they would crash loudly if the window was tampered with again. The following day, Monday, December 15th, she went to the Women's Self Help Center, where she was counseled. When she left the center it was late afternoon, so she waited until the next day to see her gynecologist to whom she implied she had been raped.

On December 20, 1980, at approximately 12:00 a.m., Van Doren was apprehended by the police in the vicinity of the victim's home. The police had responded to her telephone call reporting a possible intrusion into her home. One of the responding officers, Fitzsimmons, approached the suspect, who was hiding under a parked car in the vicinity. Fitzsimmons identified the suspect as Van Doren. Fitzsimmons gave Van Doren *Miranda* warnings and then asked him where he was going. Van Doren replied that he had been at a friend's house and was returning home. Van Doren was taken to the police station for questioning. Van Doren admitted to the officers that he had attempted to enter the victim's home by removing the basement window. He explained he intended to gain access to the house in order to have sexual intercourse with the victim. He also admitted to hav-

ing sexual relations with the victim on December 14, 1980, although claiming the intercourse was consensual. He was booked on a charge of attempted burglary.

The following day the police showed a photograph of Van Doren to the victim. Upon seeing the photograph, she broke down in tears and informed the police for the first time that Van Doren had raped her on December 14th.

At trial, Van Doren testified in his own defense and contended that sexual intercourse on December 14th was consensual in nature and once again admitted to the attempted entry of the victim's home on December 20th.

The jury rendered a verdict of guilty with respect to each of the four counts. Pursuant to these verdicts, the trial court imposed the following sentences: twenty years each for Counts II (rape) and III (sodomy), ten years for Count I (burglary), and six years for Count IV (attempted burglary). All sentences are to be served concurrently. Van Doren filed a timely motion for a new trial, which was denied. Van Doren duly filed his notice of appeal.

■ Van Doren's first point of error contends that the trial court submitted an incomplete instruction for the charge of attempted burglary because the instruction did not define the object crime of burglary as mandated by the Note on Use in MAI–CR 2d 18.02. However, the issue was not preserved for review. Consequently, our review is limited to the consideration of this point as plain error. Crim.Rule 29.12(b). We shall review all of the instructions together to determine if Van Doren's rights have been prejudiced by the failure to set forth the elements of burglary in the verdict director on attempted burglary (MAI–CR 2d 18.02). *State v. Holt,* 592 S.W.2d 759, 776 (Mo. banc 1980).

■ It is clear that the purpose of No. 3 of the Note on Use (MAI–CR 2d 18.02) is to insure that whenever an inchoate offense instruction is submitted, the jury is correspondingly informed of the elements of the

object crime which serve as the underlying foundation for the attempt charge.

■ Van Doren is correct in contending that the occurrence of the burglary and the attempted burglary were separate in time and therefore, the attempted burglary on December 20th is not a lesser included offense of the burglary committed on December 14th and, consequently, the jury should have been given a definition of burglary for the attempted burglary instruction. However, this omission does not rise to the level of manifest injustice because the elements of burglary were set forth in the verdict director for burglary (MAI–CR 2d 23.50), and are the identical burglary elements required by the Note on Use for attempted burglary (MAI–CR 2d 18.02). Consequently, we conclude the first point is meritless.

Van Doren's second point is that the trial court erred by failing to define the term "serious physical injury" in the definitional instruction. Again, Van Doren has not preserved this point for appellate review. Therefore, we must consider this matter according to Crim.Rule 29.12(b) and determine if the omission of this definition resulted in manifest injustice.

The verdict directors # 6 and # 7, based on MAI–CR 2d 20.02.1 and 20.08.1, respectively, contained the phrase "forcible compulsion." Since these instructions are nearly identical, except the former deals with rape and the latter deals with sodomy, the applicable Notes on Use are also nearly identical. Van Doren's argument is based on No. 3 of the Note on Use MAI–CR 2d 20.02.1, which in pertinent part provides:

"3. A separate instruction must be given defining the following terms, if used in any of the instructions, whether the definition is requested or not;

'forcible compulsion'

'serious physical injury.'

These terms are defined in MAI–CR 2d 33.00—Definitions."

The term "forcible compulsion" appears in the rape and sodomy verdict directors and accordingly, the required definitional instruction (MAI–CR 2d 33.01) was submitted as follows:

"Forcible Compulsion.

Means either

(a) Physical force that overcomes reasonable resistance, or

(b) A threat, expressed or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself or another. [556.-061(11) ]."

Since the definitional instruction contains the phrase "serious physical injury," that phrase should have been defined as follows:

"*Serious Physical Injury*

Means physical injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. [556.-060(24) ]" MAI–CR 2d 33.01

The absence of this definition, Van Doren contends, is prejudicial error.

■ We conclude the trial court erred in not submitting a definition for the phrase "serious physical injury", but its omission did not result in manifest injustice. Crim. Rule 29.12(b); *State v. Rodgers,* 641 S.W.2d 83 (Mo. banc 1982).

Identical claims were made by the appellants in *Rodgers* and *State v. Ogle,* 627 S.W.2d 73 (Mo.App.1981), where the trial court's failure to submit the mandatory definition of "serious physical injury" was prejudicial and the convictions were reversed. In *Rodgers,* the defendant forced his way into the victim's house. John Canavan and his sister, Mary, who was 74 years old, were home at the time. The defendant pushed Mary into a bedroom, slapped, choked, and broke her wrist during the confrontation and rape. In *Ogle,* no weapon was displayed, but the victim testified to being hit and her upper lip was cut during the rape incident.

*Rodgers* and *Ogle* are distinguishable; the appellants in these cases never possessed or displayed dangerous weapons, unlike Van Doren, who continually threatened his victim with a knife throughout her or-

deal. Furthermore, the appellants in *Ogle* and *Rodgers* preserved their claim of error; but, Van Doren did not.

■ The MAI–CR 2d 33.01 definition of "serious physical injury," requires the jury to find from the evidence the possibility of substantial risk of death, or protracted loss or impairment of a bodily member or organ or serious permanent disfigurement. Unquestionably, the evidence that Van Doren placed a knife against the victim's throat, along with threats he would harm her if she did not comply with his demands, satisfies the necessity of the required definition of "serious bodily injury." The jury was not misled by lack of definition. Obviously, a knife at someone's throat in these circumstances clearly indicates that the victim takes substantial risk of death, impairment, or disfigurement if she fails to comply. We conclude Van Doren's second point is without merit.

In Van Doren's third point, he contends the trial court placed him in "double jeopardy" by overruling his motion to dismiss and failing to elect between Count I for burglary and Counts II (rape) and III (sodomy). This issue has been preserved for appeal. Van Doren asserts his rights under Amendments 5 and 14 of the United States Constitution, Article I, Section 19 of the Missouri Constitution, and § 556.041(1) and (4) RSMo (1978) were violated.

■ Van Doren uses a three pronged argument to attack his convictions on rape and sodomy charges. First, he contends that the elements necessary to convict him of burglary were identical to those needed to sustain his convictions for rape and sodomy and that, accordingly, his constitutional right to be free from a dual conviction for the same offense was violated. "In determining double jeopardy, Missouri follows the separate or several offense rule rather than the same transaction rule." *State v. Treadway*, 558 S.W.2d 646, at 651 (Mo. banc 1977), *cert. denied*, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978). The same act can support multiple convictions so long as the convictions rest on separate statutory offenses. The double jeopardy doctrine is directed to the identity of the offense. "In the determination whether several charges arising out of one act or transaction are identical, our courts shall look to whether each offense necessitates proof of an essential fact or element not required by the other; if so, there is no identity of offense." *Id.*, at 651.

Van Doren was charged and convicted of rape, a Class A Felony, which requires proof of the following: (1) that the defendant had sexual intercourse; (2) with a person he is not married to; (3) without that person's consent; (4) by forcible compulsion. *See* Section 566.030 RSMo (Cumm. Supp.1981). The elements required for the charge of sodomy, a Class A Felony, are identical to those of rape except the language used in the first element states: (1) that the defendant must have deviate sexual intercourse. Section 566.060 RSMo (Cumm.Supp.1981).

On the other hand, first degree burglary requires proof that the defendant must: (1) knowingly enter unlawfully; (2) a building or inhabitable structure; (3) for the purpose of committing a crime within; and (4) while inside or while entering the structure or while fleeing from it, he or another participant in the burglary: (a) is armed with an explosive or deadly weapon; or (b) injures or threatens injury to any person present in the structure who is not a participant in the burglary. Section 569.160 RSMo (1978).

■ It is clear that Van Doren's conviction for burglary required proof of several elements which are separate and distinct from elements necessary for his convictions of rape and sodomy. In *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the United States Supreme Court explicitly interpreted the double jeopardy clause "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Id.* at 677. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than

the legislature intended." *Id.* at 678. The intent of the Missouri Legislature to prescribe separate punishment for the crimes of burglary, rape, and sodomy is apparent.

Van Doren also contends that if he had been charged with burglary in the normal sense, i.e., stealing some article of value, and then had found the victim at home and forcibly raped her, the element of "intent" would have been different from the other charges against him, but he was charged with Class A Felonies of Rape and Sodomy and with unlawfully entering with the sole intent to rape; therefore, he maintains his conviction of burglary was for a lesser included offense. He asserts this violates § 556.041(1) RSMo (1978) which provides:

"When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not however, be convicted of more than one offense if

(1) One offense is included in the other as defined in Section 556.046."

Section 556.046 provides in pertinent part:

"1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when

(1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged."

 The test to be applied to determine whether an offense is a lesser included offense is the statutory elements test. Identification of less included offenses requires that the greater of the two offenses encompass all of the legal and factual elements of the lesser crime. *State v. Smith,* 592 S.W.2d 165, 166 (Mo. banc 1979). Applying this test to the present case, we conclude the elements necessary to prove burglary are not encompassed by the elements needed to prove rape and sodomy.

Thirdly, Van Doren claims that since his sole intent was to rape, his action constituted a continuing and necessary uninterrupted course of conduct that culminated in the Class A Felonies of Rape and Sodomy.

Thus, his charge and conviction of burglary is a violation of § 556.041(4) RSMo (1978) which provides:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

 The fact these acts were committed on the same victim or in a single transaction does not prevent them from being properly joined in a single indictment charging separate counts. *State v. Olson,* 636 S.W.2d 318 (Mo. banc 1982) (finding defendant properly charged with separate counts of rape, sodomy, and assault of the same victim.) Accordingly, we conclude neither Van Doren's constitutional nor his statutory rights were violated and his third point is without merit.

Van Doren's fourth point is that the trial court erred in overruling his objections and motions for new trial in response to testimony elicited from a police officer relating to Van Doren's refusal to give a written statement.

Officer Toler testified about the events that occurred on December 21st. On this date Officer Toler and Officer Taylor went to the Van Doren residence and arrested Mark Van Doren. Officer Toler testified that Van Doren had been advised of his rights from a standard form used at the station and had signed this form. Van Doren then responded to police interrogation, admitting that he had previously had sex with the prosecutrix and had attempted to enter her basement window on December 20th. Van Doren's attorney, on cross-examination, questioned Officer Toler attempting to discredit the officer's memory of the precise statements made by Van Doren. In response, the prosecutor, on re-

direct, established that these statements had never been transcribed in written form.

Van Doren argues this testimony violated his right against self-incrimination and was an attempt by the prosecutor to impeach Van Doren's exculpatory story about having consensual sexual relations with the victim.

 "It is, of course, impermissible for the state to comment in argument or introduce evidence regarding a defendant's post-arrest failure to volunteer an exculpatory statement." *State v. Leonard,* 606 S.W.2d 403, 407 (Mo.App.1980). However, this rationale has no application where the defendant does not exercise his right to remain silent, but rather, elects to make statements. *State v. Trice,* 575 S.W.2d 739, 742 (Mo.App.1978). That is the case here. Van Doren, after being advised of his constitutional rights, elected to make statements to the police. Additionally, he took the stand and repeated essentially the same facts with a slight discrepancy as to the time factor. Consequently, Van Doren's fourth point is not well taken.

Van Doren's final point is that the trial court erred by allowing the state's witnesses to testify concerning their conversations with the victim two days after the rape. Van Doren asserts that "corroboration" and "outcry" are important elements in rape cases, thus he claims the delay from the time of the rape to the time the victim reported the rape to the police and complained to the witnesses was so attenuated that he was prejudiced by their testimony and the testimony was hearsay.

 It is well established that the uncorroborated testimony of the rape victim is sufficient to sustain a conviction, and any uncertainties therein are matters for the jury's resolution. *State v. Harris,* 620 S.W.2d 349, 353 (Mo. banc 1981). Testimony of prompt complaint is always admissible, in a rape case, as an element of corroboration. *State v. Taylor,* 320 Mo. 417, 8 S.W.2d 29 (1928). The question of promptness must be considered in connection with the other facts and circumstances in each particular case. *Id.* at 35.

 Generally, testimony as to the fact that a complaint has been made, is admissible in the state's case in chief, but testimony, concerning details of statements made in the complaint is not. *State v. Smith,* 540 S.W.2d 189, 191 (Mo.App.1976). While a witness may not testify as to the details of the complaint, some facts may be given to show the nature of the complaint, such as the circumstances under which it was made, the condition of the victim when the complaint was made or that the victim exhibited marks of violence. *Id.* at 191.

 The record indicates that the witnesses testified the victim had implicitly or explicitly expressed to them that she had been raped. That is the extent of their testimony on this issue, no further details were brought out at trial. Van Doren argues that too much time elapsed between the rape and the victim's complaint to the witnesses. A hiatus between forcible rape and complaint is solely a matter for jury deliberation in weighing the evidence. *State v. Ruhr,* 533 S.W.2d 656, 660 (Mo.App. 1976). It is not necessary that statements concerning the rape be shown to have been spontaneous in order to be admissible; only that the time elapsed is not so unreasonable that the appellate court could hold, as a matter of law, that the state's accusation was negated or contradicted. *Ruhr,* at 660, and *State v. Lee,* 404 S.W.2d 740, 749 (Mo. 1966). In *Ruhr,* a seven hour delay from the time the victim was raped until she called the police was not unreasonable in view of the victim's testimony, believed by the jury, that the appellant threatened to kill her if she told anyone.

 Here, the record indicates the victim testified that throughout the rape itself, she was threatened verbally and physically by Van Doren; after Van Doren left, she did not phone the police because she was afraid to and was concerned over the effect it would have on her friends and more importantly, on her 11 year old son. On the day of the rape, a friend of the

victim advised her to call the Rape Hotline. She made an appointment to meet with a counselor at the Women's Self Help Center the next day. After her appointment at the Center, it was late, therefore she waited until the following day to see her gynecologist. Considering the circumstances in the present case and the seriousness of the trauma suffered by the victim, we conclude the testimony is admissible.

The judgment is affirmed.

STEPHAN and KAROHL, JJ., concur.