**STATE of Missouri, Plaintiff–Respondent,**

v.

**Duane BOWLES, Defendant–Appellant.**

**No. 53073.**

Missouri Court of Appeals, Eastern District, Division Five.

July 19, 1988.

Donald Eugene Dalton, Jr., St. Charles, Charles F. James, Wentzville, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMEONE, Senior Judge.

### I.

Defendant-appellant, Duane Jeffrey Bowles, was charged by information with six counts of assault in the first degree and attempted arson in the first degree. Upon trial by jury he was found guilty of five counts of assault in the third degree and attempted arson. He was sentenced to one year in confinement and $1.00 fine on each count of assault, to run consecutively, and sentenced to seven years for attempted arson, to run consecutively to the sentences for assault. Sections 565.070, 564.011, 569.040, R.S.Mo., 1986.

Defendant appeals contending that (1) there is insufficient substantial evidence to convict him for the offenses of assault and attempted arson in the first degree, (2) his rights of double jeopardy under the federal and state constitutions were violated, and (3) there was prosecutorial misconduct during the state's opening statement, so that a mistrial should have been granted. We affirm.

### II.

The jury could reasonably find the following. On August 29, 1986, in Troy, Missouri, Robert P. Brodt was a patrolman for the city. He had been an officer for seven years. Officer Brodt rents and lives in a 100 year old, wooden house in Troy with his wife Deborah, and their four children, Jenny, Rachel, Michael and Joseph, who range in age from four to ten years. Brodt's partner on patrol on August 29th was Patrolman Robert Lee Kindred, Jr., a part-time police officer for the city of Troy and a captain in the fire department.

On the night of August 29th at about 10:20 p.m., Officers Brodt and Kindred were on duty together. They were flagged down by a woman, the owner of the El Charo Restaurant in Troy. She told Officer Brodt that two men were at the northeast corner of the parking lot and that she wanted them to leave. Officer Brodt told Officer Kindred to approach the two men and watch them. While Officer Brodt spoke with the owner of El Charo, Officer Kindred, approached the two men. One of these men was the appellant, Duane "Butch" Jeffrey Bowles. The other was known as Joe "Shoemaker." Bowles first walked away and Officer Kindred asked him several times to stop. Bowles then became abusive and belligerent, using profane and foul language. Officer Brodt heard them arguing as he approached and began questioning Bowles. Bowles became angry and again used profane language towards Officer Brodt. Bowles appeared to be intoxicated or under the influence of drugs. Bowles had been drinking "quite a bit." Officer Brodt indicated to Officer Kindred that he knew this was "Butch" Bowles and "that's just the way he is." Officer Brodt told Bowles to leave the parking lot, that he was trespassing, and told him to go back to a bar adjacent to the lot where he had been before the confrontation. Bowles returned to the bar, the Wagon Wheel, adjacent to the El Charo parking lot. At the time no arrests were made.

It was now about 10:45 p.m. and Officer Kindred drove Officer Brodt home because his shift was ending. At his home, the children were in bed asleep. His wife Deborah greeted him. He changed into plain clothes. He was leaving shortly to do some undercover work. Officer Brodt left his house at about 11:00 p.m. and began to walk down the sidewalk.

While Officer Brodt was at his home, Bowles was having a drink at the Wagon Wheel with Edward Ray, known locally as "Cool Papa John." Bowles was angry about the confrontation in the parking lot with the officers. He told Ray, "I think I should just go over there and burn his damned house down while he's on duty." Ray said he had some gasoline at his home and left the Wagon Wheel to get it. When Ray returned to the bar, he drove Bowles down an alley behind the Brodt's home. Bowles had a green plastic jug in one hand filled with gasoline and a butane cigarette

lighter in the other. He took the cap off the jug. He spilled gasoline on his pant legs and shoes. He ran up to the back of the house. He poured gasoline onto the house. Bowles testified, "When I got to the house after I put the gas on there I was going to light the—I was going to start the fire, burn the house." When Bowles ran up to the Brodt's house, he noticed a light was on in the back of the house. He testified that this was no indication in his mind that somebody was home. After pouring gasoline on the house, appellant heard a noise and crouched down. Appellant denied he had any intent to injure anyone, and when he heard a second noise he abandoned the idea, because he didn't "want to hurt nobody."

According to Deborah's testimony, there were lights on in the house at the time. She and Officer Brodt also testified that the T.V. was turned on loudly and could be heard from the outside of the house.

When Officer Brodt was leaving his house, he saw the headlights of "Cool Papa" John Ray's van through the woods behind his house. He heard a car door slam, stopped where he was, and waited for someone to appear. Brodt saw someone walking or running along a chain link fence of his neighbor's house. He waited for the person to appear but no one did. He went to the corner of the house and waited. As he looked along the side of the house he saw someone "crouched over."

Brodt testified that after waiting for the person to appear he looked around the back of the house, without moving from where he stood. He "looked down alongside of the house" and saw someone "crouched over." He drew his weapon as he approached the "subject." He recognized Duane Bowles. Brodt testified that Bowles stood up and reached for his "back pocket, hip pocket." Brodt told Bowles to put his hands up. Appellant was then arrested for trespass. A butane lighter was found in his hip pocket.

While Officer Brodt spoke with Bowles, Deborah came out of the house, having heard her husband's voice. She asked her husband if she should call for help. She returned to the house, called the Lincoln County sheriff's office and came back outside. She testified that there was a strong odor of gasoline. When Brodt placed Bowles under arrest for trespassing, he handcuffed him and brought him to the front of the house. At this time appellant was loud and boisterous and appeared intoxicated.

Meanwhile, Officer Kindred arrived. He responded to the Lincoln County dispatcher's request to check out a prowler at the Brodt's residence. The officers placed Bowles in the squad car and then went to the rear of the house. They recognized a strong odor of gasoline, and a wet spot, approximately four feet by seven feet, on the house where Bowles had poured the gasoline. Laboratory analysis later showed gasoline on the lawn around the house. Brodt found the plastic jug, which still contained some gasoline, and also found the cap. There was gasoline on the side of the house and on the ground. They took Bowles to the sheriff's office where he was again belligerent and used abusive language towards the officers.

On October 24, 1986, appellant was charged with six counts of assault in the first degree for assaulting Officer Brodt, his wife and four children, and one count of attempted arson in the first degree. Appellant was tried before a jury on April 1 and 2, 1987, in the circuit court of Pike County upon a change of venue. The jury found appellant not guilty of assault against Officer Brodt, but found him guilty of third degree assault as to Mrs. Brodt and the four children. He was also found guilty of attempted arson in the first degree. On April 20, 1987, the trial court sentenced appellant to a total of twelve years imprisonment—seven years for attempted arson in the first degree and five years for the assaults in the third degree. In due time appellant appealed.

III.

In his first point, appellant contends that the trial court erred in denying his motion for judgment of acquittal at the end of the state's case and at the close of the evidence

for the reason that, since he was charged with assault and attempted arson, there was insufficient evidence to show a specific intent to commit assault and attempted arson. He argues that in an "attempt" offense, the law requires proof of a specific intent to commit "that offense." He further argues that § 564.011, is "directed to the object crime" so that the state "must prove" that it was his "conscious object" to cause death or serious physical injury to the persons in the house and damage to the building. At most, he says, the state's evidence did not prove that he intended to cause serious physical injury but only to burn an inhabitable structure. In short, he contends that the state did not prove any specific intent to cause death or serious physical injury to the persons in the house or to damage the Brodt home, hence the motion for judgment of acquittal should have been granted.

In determining this issue, we must accept the state's evidence as true and give the state the benefit of all reasonable inferences therefrom, disregarding all evidence and inferences to the contrary. *See State v. Williams*, 652 S.W.2d 226, 227 (Mo.App. 1983).

■■■ As to the issue of attempted arson, it is, of course, necessary, under § 564.011, that a substantial step [1] be taken to engage in conduct which would damage an inhabitable structure when persons are present by starting a fire which recklessly endangers the persons present. Section 569.040. There is no requirement that appellant know that a human being is in the house. In arson, first degree, there need be no intent or knowledge that the structure is occupied. If there is a human being in the house that is sufficient. *State v. Aguila*, 14 Mo. 130, 132 (1851); *State v. Fetty*, 654 S.W.2d 150, 153 (Mo.App.1983). Although such knowledge is not required, under the evidence here, there was reason to believe that persons were present. The lights were on in the house, the television could be heard. Appellant knew or should have known someone was on the premises.

■■■ As to appellant's contention as to the assaults that he had no specific intent to cause death or serious physical injury to the occupants of the Brodt home, this contention must fail because there was substantial evidence for the jury to find him guilty of assault in the third degree.

Although it is necessary to prove a specific intent to cause serious physical injury for assault in the first degree, *State v. Robinson*, 710 S.W.2d 14, 17 (Mo.App. 1986), the intent necessary for assault in the third degree under § 565.070 is to show, by considering all the facts in evidence and the favorable inferences reasonably drawn therefrom, in the light most favorable to the state, that appellant recklessly engaged in conduct which created a grave risk of death or serious physical injury to another person. Reckless conduct, in contemplation of law, is equivalent to intent when such conduct creates a grave risk of death or serious physical injury to another. Section 565.070.1(4).

Here, the state presented evidence that when appellant poured gasoline on the house, late at night, several rooms had lights on and the television was on so that it could be heard outside. Appellant admitted that he "threw gas on the house." When he was apprehended, he was "crouched over" next to the house with a lighter in his hand. The evidence was sufficient for the jury to conclude that appellant's conduct recklessly created a grave risk of death or serious physical injury to others, so as to find appellant guilty of third degree assault.

### IV.

■■■ In his second point, appellant contends that the trial court erred in denying his pretrial and post-trial motions to dismiss the assault counts, and in submitting the verdict directing instructions on assault in the third degree because his rights of double jeopardy under the federal and state constitutions were violated. He contends that in submitting the assault counts, the

---

**1.** *See State v. Ailshire*, 664 S.W.2d 630 (Mo.App. 1984)—presence of gasoline splashed on walls, constitutes "substantial step" of committing arson.

court violated his rights to protection against double jeopardy under the Fifth and Fourteenth Amendments because he was convicted of multiple assaults in the third degree when there was only one act. He further contends that his rights against double jeopardy were violated because he was convicted of assault and attempted arson, so that he suffered "multiple punishments" for the "same offence." Under the judicial authorities, and the precedents interpreting the double jeopardy clause, we find no merit to this point.

The Constitution of the United States, in embodying the "double jeopardy" provision in the Fifth Amendment, sought to protect the long-standing, historical concept that no person is to be "subject for the same offense to be twice put in jeopardy of life or limb." The origin of this principle of human liberty can be traced to Greek and Roman times and it became established long before this country's independence. J. Sigler, *Double Jeopardy* (1969); *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 697, 3 L.Ed.2d 684 (1959) (Black, J., dissenting); *Constitution of the United States*, U.S. Govt. Printing Office at 1093 (1973).[2] The doctrine was carried into the law of this country through the works of Blackstone, who in his *Commentaries* wrote that the plea of *autrefoits acquit*, or former acquittal, is grounded on this universal maxim. 4. W. Blackstone, *Commentaries* 335. As was stated in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), the

> [u]nderlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an

alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Quoted in *Benton v. Maryland, supra*, 89 S.Ct. at 2063.

The Missouri Constitution, although in more restrictive language, prohibits a person from being put again in "jeopardy of life or liberty for the same offense, after being once acquitted by a jury." Art. I, § 19 Mo. Const. This restrictive section does not technically track the language embodied within the Fifth Amendment, but judicial glosses over the years, and the applicability of the Fifth Amendment to the States, through the Fourteenth, mandate that the principles and glosses on the Fifth, apply to the States. *Benton v. Maryland, supra*, 89 S.Ct. at 2061–63. There is no readily discernible difference between the Fourteenth Amendment and the Missouri guarantee. *State v. Richardson*, 460 S.W.2d 537, 538 (Mo. banc 1970); *State v. Treadway*, 558 S.W.2d 646, 651 (Mo. banc 1977).

This constitutional protection consists of separate and distinct guarantees: (1) it protects against a second prosecution for the same offense after acquittal, (2) it protects against a second prosecution for the same offense after conviction, (3) it protects against multiple punishments for the same offense, and (4) it protects against multiple prosecutions for the same offense.[3] *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State v. Horne*, 710 S.W.2d 310, 314 (Mo.App.1986); *Sours v. State*, 593 S.W.2d 208, 211 (Mo. banc 1980).

---

**2.** *See also* 1 J. Bishop, *New Criminal Law* § 1051 (8th ed. 1892); Comment, *Twice in Jeopardy*, 75 Yale L.J. 262, 268 (1965); C. Cantrell, *Double Jeopardy and Multiple Punishment: An Historical And Constitutional Analysis*, 24 S.Tex. L.J. 735 (1983).

**3.** *See also*, Scurlock, *Basic Principles of the Administration of Criminal Justice*, 44 U.M.K.C.L.

Rev. 138, 194 (1975). G. Thomas, *Multiple Punishments For The Same Offense: The Analysis After Missouri v. Hunter*, 62 Wash.U.L.Q. 79 (1984); G. Thomas, *The Prohibition of Successive Prosecutions For The Same Offense: In Search of a Definition*, 71 Iowa L.Rev. 323 (1986).

We deal here with the issue of multiple prosecutions for the same act or acts of appellant. Although a minority of the Justices of the Supreme Court of the United States adhere to the view that the Double Jeopardy Clause requires the prosecution, in one proceeding, to prosecute "all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction," [4] Missouri has always followed the "separate or several offense rule" rather than the same transaction rule. *State v. Treadway, supra,* 558 S.W. 2d at 651; *State v. Carter,* 535 S.W.2d 537, 538 (Mo.App.1976); *State v. Moton,* 476 S.W.2d 785, 788 (Mo.1972) (robbery of two persons—convicted of two robberies in the first degree—no violation of double jeopardy). The double jeopardy doctrine is directed to the identity of the offense, and not to the act. *State v. Toombs,* 326 Mo. 981, 34 S.W.2d 61, 64 (1930).

The fountain-head of the double punishment doctrine is *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), quoted in *Sours v. State,* (Sours I), 593 S.W.2d 208, 211 (Mo. banc 1980), and *Sours v. State,* (Sours II), 603 S.W.2d 592, 608 (Mo. banc 1980) (Rendlen, J., dissenting). The principle that the double jeopardy clause prohibits multiple prosecutions for the same offense has been reaffirmed in many decisions.[5]

In following the separate or several offenses rule, *State v. Carter, supra,* 535 S.W.2d at 538, Missouri forbids the state from prosecuting an offense piecemeal.

*State v. Chambers,* 524 S.W.2d 826, 828 (Mo. banc 1975); *State v. Treadway, supra,* 558 S.W.2d at 651; *Lorton v. State,* 7 Mo. 55 (1841); *State v. Morphin,* 37 Mo. 373 (1866)—stealing several items.

In determining whether several charges resulting from one act or transaction may be prosecuted, Missouri courts have utilized the test laid down in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See State v. Van Doren,* 657 S.W.2d 708, 714 (Mo.App. 1983). In *Blockburger,* the United States Supreme Court stated:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421 [422], 55 L.Ed. 489 and authorities cited.

*Blockburger,* 52 S.Ct. at 182.

In recent decisions, the Supreme Court of the United States recognized the principle that successive prosecutions are barred only if the two offenses for which the defendant is prosecuted are the "same" for double jeopardy purposes. In *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Court, in affirming a manslaughter conviction, held that double jeopardy was not violated when defendant was convicted of failing to reduce speed

---

**4.** *See* Mr. Justice Brennan's comments in *Ashe v. Swenson,* 397 U.S. 436, 453–454, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 and n. 7 (1970); *Brown v. Ohio,* 432 U.S. 161, 170, 97 S.Ct. 2221, 2228, 53 L.Ed.2d 187 (1977) (Brennan, J. concurring).

**5.** *Simpson v. United States,* 435 U.S. 6, n. 11, 98 S.Ct. 909, n. 11, 55 L.Ed.2d 70 (1978); *Brown v. Ohio, supra,* 97 S.Ct. 2221, (joy riding and auto theft); *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977); *Iannelli v. United States,* 420 U.S. 770, n. 18, 95 S.Ct. 1284, n. 18, 43 L.Ed.2d 616 (1975); *State v. Richardson,* 460 S.W.2d 537, 539 (Mo. banc 1970); *State v. Neal,* 514 S.W.2d 544 (Mo. banc 1974)—assault and robbery; *Cf., State v. Sprous,* 639 S.W.2d 576, 578 (Mo.1982); *Green v. State,* 659 S.W.2d 219 (Mo.App.1983)—assault and robbery; *State v. Collett,* 526 S.W.2d 920 (Mo.App.

1975)—robbery and subsequent assault; *State v. Horne,* 710 S.W.2d 310, 315 (Mo.App.1986) (exhibiting dangerous weapon in the presence of several persons). Missouri has had difficulties with multiple prosecutions for robbery with a deadly weapon and armed criminal action. *Sours v. State,* 593 S.W.2d 208 (Sours I) (Mo. banc 1980), *vac. and remanded,* 446 U.S. 962, 100 S.Ct. 2935, 64 L.Ed.2d 820 (1980); *Sours v. State,* 603 S.W.2d 592 (Sours II) (Mo. banc 1980), *cert. den.,* 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981)—violation of double jeopardy. The issue was not finally resolved until *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *State v. Kirksey,* 713 S.W.2d 841, 848 (Mo.App.1986); *State v. Henderson,* 698 S.W.2d 596, 599 (Mo.App.1985).

and involuntary manslaughter. The Court adhered to the *Blockburger* test. The Court recognized that *Blockburger* focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial.

In *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985), the Court adhered to the principles in *Brown v. Ohio, supra,* and affirmed convictions based on the dual sovereignty doctrine. *See also, Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

The *Blockburger* test has been followed in Missouri and has been articulated in many decisions. In *State v. Chambers, supra,* 524 S.W.2d at 829, quoted in *State v. Carter, supra,* 535 S.W.2d at 538; and *State v. Treadway, supra,* 558 S.W.2d at 651, the test is as follows:

> In the determination of whether several charges from one act or transaction are identical, our courts look to 'whether each offense necessitates proof of an essential fact or element not required by the other;' if so, there is no identity of offense. *State v. Chambers,* 524 S.W.2d 826, 829 [1, 2] (Mo. banc 1975).

*State v. Carter, supra,* 535 S.W.2d at 538.[6]

Since appellant, in the case at bar, was convicted of third degree assault and attempted first degree arson, the crucial issue, therefore, is whether the offense of assault in the third degree requires proof of an additional element which attempted arson in the first degree does not, and whether attempted arson in the first degree requires proof of an additional element which assault in the third degree does not.

Section 565.070, assault in the third degree, provides:

1. A person commits the crime of assault in the third degree if:

\* \* \* \* \* \*

(4) He recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person;

\* \* \* \* \* \*

2. Assault in the third degree is a class A misdemeanor. . . .

Section 564.011, R.S.Mo., 1986 deals with attempts. It provides:

1. A person is guilty of attempt to commit an offense, when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Section 569.040, arson in the first degree, provides:

1. A person commits the crime of arson in the first degree when he knowingly damages a building or inhabitable structure, and when any person is then present or in near proximity thereto, by starting a fire or causing an explosion and thereby recklessly places such person in danger of death or serious physical injury.

Applying the *Blockburger* test, we hold that the offense of assault in the third degree, under the circumstances, and attempted arson in the first degree are not the same offenses within the meaning of double jeopardy. Assault in the third degree does not require the element of attempting to damage an inhabitable structure when a person is then present or near thereto, the necessary element for arson under § 569.040. Assault in the third degree requires that a person recklessly engage in conduct which creates a grave risk of death or serious physical injury to anoth-

---

**6.** The words "or element," appear to a part of the test in Missouri since *State v. Toombs,* 326 Mo. 981, 34 S.W.2d 61, 64 (1930). In *State v. Van Doren, supra,* 657 S.W.2d 708, this court held that in determining whether several charges arising out of one act or transaction are identical for double jeopardy purposes, Missouri courts look to whether each offense necessitates proof of essential fact or element not required

er.[7] This is a catch-all provision applicable to innumerable factual situations. Assault is an offense against persons. Attempted arson is principally an offense against property.

Assault in the third degree and attempted arson are two separate offenses, not one. In the offense of assault in the third degree, the necessary element is knowledge of conduct which creates a grave risk of death or serious bodily injury. The intent is an intent to act recklessly, or engage in reckless conduct, which, in contemplation of law, is equivalent to intent. The defendant must consciously disregard a substantial and unjustifiable risk which constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

In attempted arson first degree, the elements are (1) attempted damage to an inhabitable structure, (2) when a person is then present, (3) by attempting to start a fire and (4) thereby recklessly placing such person or persons in danger. To prove this offense, the prosecution must show, in addition to an assault, the additional facts of attempt to damage an inhabitable structure by starting a fire and placing persons in danger. While there may be only one act, the two offenses are not the same for the purposes of double jeopardy. A person may be found guilty of attempted arson in the first degree without being guilty of assault in the third degree, and *vice versa.* In short, there may be an offense of attempted arson without an assault in the third degree, and there may be an assault without attempted arson.

Neither is assault in the third degree a lesser included offense of attempted arson under § 569.040. Whether an offense is a lesser included one, the test to be applied is the statutory elements test. Identification of lesser included offenses requires that the greater of the two offenses encompass all of the legal and factual elements of the lesser crime. *State v. Van Doren, supra,* 657 S.W.2d at 715; *State v. Gibson,* 623 S.W.2d 93, 101 (Mo. App.1981); *State v. Cavitt,* 703 S.W.2d 92 (Mo.App.1985) (assault in third degree not lesser included offense of unlawful use of weapon); *State v. Smith,* 592 S.W.2d 165, 166 (Mo. banc 1979); *State v. Amsden,* 299 S.W.2d 498, 504 (Mo.1957), discussed in O. Richardson, *supra, Lesser Graded or Included Offenses,* Mo.Bar CLE, Comments at 9. A lesser offense is not included in the greater offense unless it is impossible to commit the greater offense without first committing the lesser. *State v. Seddens,* 624 S.W.2d 470, 473 (Mo.App.1981); §§ 556.041, 556.046, R.S.Mo., 1986. It is possible to commit attempted arson in the first degree, under § 569.040, without first committing assault under § 565.070.

In *State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981), the Supreme Court, in an analogous case, held that the defendant was not placed in jeopardy for the same offense when he was charged and convicted of arson in the first degree and assault in the first degree. The court stated that arson in the first degree requires that the defendant damage a building or an inhabitable structure, and assault in the first degree does not require any such element. Assault requires a serious physical injury to another, and arson in the first degree

---

by the other; if so, there is no identity of offense.

7. The elements of assault consist of an unlawful act which generally places another in reasonable apprehension of receiving an immediate battery, but this is not always necessary. *See Adler v. Ewing,* 347 S.W.2d 396, 402 (Mo.App. 1961); R. Perkins, *Criminal Law,* 106, 114 *et seq.* (1969); O. Richardson, *Assault,* Mo.Bar CLE—*Comments on Missouri Approved Instructions,* at 4 (1974). A victim need not be aware of an assault. *State v. Shroyer,* 104 Mo. 441, 16 S.W. 286, 287 (1891). "The assault is complete, 'if the intent, with the present means of carrying

it into effect, exists and preparations therefor have been made' ... even though there has been no actual violence to the person." *State v. Selle,* 367 S.W.2d 522, 527 (Mo.1963). It is the "apparent" power to inflict harm and not the present ability to do so. *Richardson, supra,* at 11; *see also, Perkins, supra, Criminal Law* at 118–121 indicating that the early scholars of the common law did not mention "present ability." Assault in the civil law are not identical to assault in the criminal law. Awareness of the assault is necessary in civil law. *See Perkins, supra* at 115 and *Restatement Torts (Second),* § 22 (1965).

does not require that any such element be established.

Appellant relies upon *State v. Parsons,* 513 S.W.2d 430 (Mo.1974) and *State v. Horne, supra,* 710 S.W.2d at 310. In *Parsons,* it was held that the defendant could not be convicted of both murder by bombing and bombing, when the victim was one and the same.

*State v. Horne, supra,* involved the interpretation of § 571.030 which prohibits exhibiting "in the presence of one or more persons" any weapon. This court held that under the statute there is but one offense when the weapon is exhibited before several individuals. Both of these decisions are distinguishable.

■ Appellant further contends that the double jeopardy clause is violated because he was convicted of five counts of assault in the third degree when Officer Brodt's wife and children were in the house. He contends that the offenses of assault in the third degree are offenses "included in each other" so that he cannot be prosecuted for various assaults upon Officer Brodt's wife and children. He relies upon *State v. Horne, supra.* *Horne* is not dispositive. This point of contention is without merit.

The overwhelming weight of authority holds that a single act of assault by the defendant which affects two or more persons constitutes multiple offenses. Annot., 8 A.L.R. 4th 960 (1981); *State v. Madera,* 198 Conn. 92, 503 A.2d 136 (1985)—14 counts of arson; *Cf., State v. Moton, supra,* 476 S.W.2d 785; *Anderson v. Love,* 681 F.Supp. 1279 (M.D.Tenn.1986) (two aggravated rapes); A. Vestel and D. Gilbert, *Preclusion of Duplicative Prosecutions: A Developing Mosaic,* 47 Mo.L.Rev. 1, 5 (1982).

In view of the above authorities, appellant's second point must be denied.

### V.

■ Appellant's last point is that the court erred in denying his motion for a mistrial during the prosecutor's opening statement.

During his opening statement, the prosecutor indicated that there would be evidence of several encounters

"[b]etween Bob Brodt and the defendant prior to the night of August 29, 1986. There was an encounter earlier that same night. Bob Brodt and his—a fellow officer, Bob Kindred, were called to the El Charo Restaurant, the scene of a recent arson."

Defense counsel moved for a mistrial, objecting that the prosecutor told the jury that the officer went to the El Charo "because there had been a recent arson at the restaurant." The court denied the request for a mistrial.

Appellant contends that the statement of the prosecutor injected "another crime" of arson into the proceedings which was prejudicial.

There was no error. The rule is longstanding that the declaration of a mistrial is a drastic remedy, and the power of the trial court in this respect should be exercised only in extraordinary circumstances. The trial court is in a better position than an appellate court to evaluate the prejudicial effect, if any. The appellate court's review is to determine, as a matter of law, whether the trial court abused its discretion in refusing to grant a mistrial. *State v. Camper,* 391 S.W.2d 926, 927–28 (Mo. 1965).

We find no abuse of discretion in denying a mistrial at that stage of the proceeding.

■ Furthermore, the principle of injecting unrelated crimes was not violated here. In order to invoke the rule that evidence which tends to prove other crimes is inadmissible, there must be a reference to, or evidence of, the fact that the defendant has committed, or has been accused of, or charged with, or convicted of, or been associated with, another crime or crimes. *State v. Lorenz,* 620 S.W.2d 407, 410 (Mo.App. 1981); *State v. Garcia,* 682 S.W.2d 12, 13 (Mo.App.1984). The reference in the opening statement did not link appellant with any other crime.

We rule this point against appellant.

Having considered all the points raised by the appellant, and finding no prejudicial error, the judgment of conviction is affirmed.

The judgment is affirmed.

SATZ, C.J., and CARL R. GAERTNER, J., concur.