

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,                )
                                         )

       Respondent/Cross-Appellant,     )

                                           )

       v.                                      )       No. SC94313

                                           )

ELVIS SMITH,                        )

                                         )

       Appellant/Cross-Respondent.     )

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Julian L. Bush, Judge

### *Opinion issued March 10, 2015*

Elvis Smith appeals the judgment of conviction entered by the circuit court of the City of St. Louis after a jury found him guilty of murder in the first-degree and armed criminal action. Smith claims: (1) the circuit court erred in refusing to submit his self-defense instruction on murder and assault and (2) the circuit court's written judgment contains a clerical mistake that he pleaded guilty to murder and armed criminal action. The State cross-appeals, asserting the circuit court erred in granting Smith's motion for judgment of acquittal on assault and armed criminal action in connection with the assault. This Court granted transfer and has jurisdiction. Mo. Const. art. V, § 10.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On May 21, 2011, Smith sold Martez Williams a small amount of heroin, but

Williams refused to pay him.  That same day, Smith told Jesse White that he "was going to get [Williams]."  The next day, Smith and Wilber Hardwrict, Smith's drug supplier, encountered Williams, a man named Josh,[1] and David Thomas in the Peabody housing project.  Smith asked Williams if he had the money he owed for the heroin, and Williams responded, "What you want to do, fight?"  Smith pulled out a gun, and Williams grabbed Josh to use as a shield.  Williams pushed Josh at Smith and ran in a zigzag pattern until he stopped to hide between two dumpsters.  While Williams ran, Smith fired his gun three or four times.  One of the shots Smith fired struck Jnylah Douglas in the head while she was playing on a nearby playground.  Douglas died a few weeks later from the gunshot wound.

The State charged Smith with one count of first-degree murder, one count of first-degree assault, two counts of armed criminal action, and one count of unlawful possession of a firearm.[2]  In Count I, the State charged that "[Smith] after deliberation, knowingly caused the death of Douglas by shooting her when he was shooting at Williams."  Count III provided that "[Smith] shot at Williams, and such conduct was a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to Williams, and was done with the purpose of committing such assault."

The circuit court held a four-day jury trial.  The State presented the testimony of several witnesses including Detective Dan Fox from the St. Louis metropolitan police

---

[1] Josh was also referred to as "Jay" and "Jake" at trial.
[2] The circuit court sustained the motion for judgment of acquittal regarding the felon in possession of a firearm charge at the close of all evidence on the basis that the State presented insufficient evidence to support a conviction.

department, eyewitnesses Juan House, David Thomas, Penny Griffin, Jesse White, and Williams. Smith testified in his own defense. Following the close of all evidence, Smith moved for a judgment of acquittal on either murder in the first or second-degree or assault in the first-degree on the grounds that convictions for both would violate double jeopardy. The circuit court overruled Smith's motion but reserved for reconsideration the double jeopardy issue before entering judgment. At the instruction conference, Smith proffered a self-defense instruction for murder and assault. The State objected to the submission of a self-defense instruction, and the circuit court sustained the State's objection.

The jury found Smith guilty of first-degree murder, first-degree assault, and both counts of armed criminal action. Smith filed a motion for judgment of acquittal notwithstanding the jury's verdict, asserting that convictions for first-degree murder and armed criminal action in connection with the murder, first-degree assault, and armed criminal action in connection with the assault violated double jeopardy and § 556.041(1), RSMo 2000. The circuit court partially granted this motion, finding that, "to avoid double jeopardy, there has to be an element in each charge that's not present in the other charge." The circuit court concluded that "there's nothing in the assault that's not in the murder" and acquitted Smith of first-degree assault and the related armed criminal action conviction.

3

The circuit court sentenced Smith to concurrent sentences[3] of life imprisonment for murder and thirty years' imprisonment for armed criminal action. Smith appeals, and the State cross-appeals.

## Analysis

### I. Self-Defense Jury Instruction

Smith asserts that the circuit court erred in refusing to submit his self-defense instruction on first-degree murder and first-degree assault. Specifically, Smith contends that: (1) substantial evidence supported the submission of a self-defense instruction on both charges and (2) his assertion that he accidentally shot Douglas did not preclude submission of a self-defense instruction on first-degree murder. In determining whether the circuit court erred in refusing to submit an instruction on self-defense, the evidence is viewed in the light most favorable to the defendant. *State v. Westfall*, 75 S.W.3d 278, 280 (Mo. banc 2002). The circuit court must submit a self-defense instruction "when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony," *id.* at 281, and failure to do so is reversible error. *State v. Bolden*, 371 S.W.3d 802, 805 (Mo. banc 2012).

A defendant may be justified in the use of physical force when he reasonably believes such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force by another. Section 563.031.1, RSMo Supp. 2013. The use of deadly force, however, requires he "reasonably believes that such

---

[3] Neither the circuit court's oral pronouncement nor written judgment provides whether the sentences are to run concurrently or consecutively and, therefore, the sentences shall run concurrently. Rule 29.09.

deadly force is necessary to protect himself . . . or another against death, serious physical injury, or any forcible felony."  Section 563.031.2(1), RSMo Supp. 2013.  "Reasonably believe" means "a belief based on reasonable grounds, that is, grounds that could lead a reasonable person in the same situation to the same belief.  This depends upon how the facts reasonably appeared.  It does not depend upon whether the belief turned out to be true or false."  MAI-CR 3d 306.06A[6].  "Deadly force" means "physical force which is used with the purpose of causing or which a person knows to create a substantial risk of causing death or serious physical injury."  MAI-CR 3d 306.06A[5].

Smith does not dispute that he used deadly force in shooting his gun at Williams.  Rather, Smith asserts that there was substantial evidence to warrant a self-defense instruction because he was "not the initial aggressor[,] . . . he tried to avoid further confrontation with Mr. Williams by backing away and declining to fight him, and when this was unsuccessful, he began to fear imminent serious physical injury or death" and "only then did [Smith] draw his gun and begin firing."

The record in this case does not establish that Smith reasonably believed the use of deadly force was necessary.  Rather, the record reveals that Williams threatened to fight, yelled at, and came within inches of Smith.  Williams neither hit nor exhibited a weapon to Smith.  No one, including Smith, saw a weapon on Williams during the incident.  Smith testified that not until Williams had run away and stopped between two dumpsters did he "figure" that Williams was looking for a gun.  Accordingly, Smith was not faced with a real or apparently real necessity to use deadly force to defend himself against

5

Williams when he fired the first gunshot before Williams ran away. Accordingly, the circuit court did not err in its refusal to submit a self-defense instruction.

## II. Clerical Error

Smith seeks correction of a clerical mistake in the written judgment providing that he pleaded guilty to first-degree murder and armed criminal action when he went to trial on both counts. He requests a remand to the circuit court for correction of judgment *nunc pro tunc*. The State concedes that the written judgment contains a clerical mistake and agrees that remand is proper to correct the written judgment.

The circuit court may correct clerical mistakes in the judgment that result from oversight or omission. Rule 29.12(c). The circuit court's failure to accurately record that Smith's convictions resulted from trial rather than a plea of guilty was a clerical mistake and can be corrected. *Id.*

## III. Double Jeopardy

The State has cross-appealed the circuit court's ruling that the murder and assault convictions violated double jeopardy. Smith argues that because the charges of murdering Douglas and assaulting Williams stemmed from the same conduct, shooting at Williams, the two convictions constitute "multiple punishments for the same offense" in violation of double jeopardy.

The Fifth Amendment of the United States Constitution, and article I, section 19 of the Missouri constitution, protect against "a second prosecution for the same offense after acquittal . . . a second prosecution for the same offense after conviction . . . and *multiple punishments for the same offense*." *Brown v. Ohio*, 432 U.S. 161, 165 (1977)

6

(emphasis added). The Supreme Court of the United States first created a test to determine if two crimes constitute the same offense, for double jeopardy purposes, in *Blockburger v. U.S.* 284 U.S. 299 (1932). The Supreme Court stated, "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. If each crime requires proof of a fact the other does not, and the defendant is convicted of both, double jeopardy is not violated. *Id.*

Smith was charged with assault for shooting at Williams and murder for shooting at Williams and killing Douglas. Smith argues that because all the elements of assault, in the abstract, must be proven to convict him of murder, it is a violation of double jeopardy to be convicted of assault and murder. This is incorrect.

When the same conduct results in harm to two or more victims, double jeopardy is not violated if a defendant is convicted for the harm to each victim. In *State v. Whitley*, this Court held a defendant could be convicted of three separate counts of manslaughter when the defendant killed three persons in a single automobile accident. 382 S.W.2d 665, 667 (Mo. 1964). The basis for the Court's holding was "[t]he gravamen of the offense is the killing of a human being, and the statute by its terms contemplates that there shall be as many offenses as there are human beings killed, whether by one or several acts." *Id.* at 667. The killing of three individuals was the basis for three separate charges and convictions and did not violate double jeopardy. *State v. Shaw* provides a further example that is analogous to this case. 219 So.2d 49 (Fla. Dist. Ct. App. 1969).

7

In *Shaw*, the defendant was convicted of both assault and manslaughter for shooting a pregnant woman and killing her unborn child. *Id.* at 50. The court upheld the convictions because the State was required to prove an additional fact for each count, the distinct victims. *Id.* at 51. *See also State v. Couture*, 482 A.2d 300 (Conn. 1984) ("Where crimes against persons are involved, a separate interest of society has been invaded for each violation. Therefore when two or more persons are victims of a single episode there are as many offenses as there are victims." Id. at 319.); *State v. Rabe*, 291 N.W.2d 809 (Wis. 1980) (holding the State may charge separate counts of homicide for each person killed in an automobile collision resulting from drunk driving); *Vigil v. State*, 563 P.2d 1344 (Wyo. 1977) (holding a defendant could be convicted of five counts of assault with a deadly weapon when he fired a gun into one car with five occupants).

Smith is correct that the common act tying together the assault of Williams and murder of Douglas was his shooting at Williams. The conduct that resulted in the assault on Williams and the death of Douglas is the same: shooting at Williams. However, the State was required to prove two different facts for each charge, namely, that Smith had killed Douglas and assaulted Williams. *See Blockburger*, 284 U.S. at 304; *Whitley*, 382 S.W.2d at 667. Smith committed separate crimes by assaulting one victim and killing a different victim. Therefore, Smith can be held accountable for both the murder of Douglas and the assault of Williams and the protection against double jeopardy is not violated.

## Conclusion

The circuit court's judgment with respect to the assault and related armed criminal action is reversed, and the cause is remanded for sentencing on the jury's verdicts on those offenses and the clerical error.  In all other respects, the judgment is affirmed in part, reversed in part and remanded.

_____
Zel M. Fischer, Judge

All concur.