

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED104090 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1422-CR02617-01 |
| | ) | |
| WILLIAM EDWARDS, | ) | Honorable Michael F. Stelzer |
| | ) | |
| Appellant. | ) | Filed: February 7, 2017 |

## Introduction

William Edwards (Defendant) appeals the judgment entered upon his convictions of two counts of assault in the second degree, two counts of armed criminal action, one count of resisting arrest, and one count of driving while revoked. He argues that his two convictions for assault resulting from the same act violate his right to freedom from double jeopardy. He also contests the sufficiency of the evidence to support his convictions. We affirm.

## Background

Defendant waived a jury trial on the above charges. The evidence at his bench trial, in the light most favorable to the judgment, was the following.[1] On July 5, 2105, Sergeant

---

[1] State v. Anderson, 386 S.W.3d 186, 190 (Mo. App. E.D. 2012) (reviewing court views evidence in light most favorable to verdict).

Paul Anderson (Sergeant Anderson) was working at a DWI checkpoint, where it was his task to locate any vehicles turning around or trying to avoid the checkpoint before reaching it. He saw a dark-colored Mercury turn around before reaching the checkpoint and then accelerate away from the checkpoint at a high rate of speed. Sergeant Anderson immediately pulled into the street behind the Mercury, activated his lights and sirens, and attempted to stop the vehicle. The driver of the Mercury, later identified to be Defendant, did not stop.

Sergeant Anderson followed the Mercury and observed it go through a red light without stopping, traveling at speeds up to 70 miles per hour on a street with a speed limit of 30 miles per hour. After turning onto a different street, the Mercury reached speeds of 90 miles per hour and was crossing over the center lane of the road. Defendant drove the car through another red light while on the left side of the road. At one point, Defendant had to stop the Mercury due to traffic backed up at a red light. Sergeant Anderson pulled up behind the Mercury, exited the police vehicle, walked over to the Mercury, and attempted to take Defendant into custody. The driver's side door handle of the Mercury was locked, and Defendant continued trying to move the vehicle around traffic. The stoplight turned green and traffic started to flow again, so Sergeant Anderson returned to his police vehicle and continued following Defendant.

As Sergeant Anderson was following Defendant eastbound at a speed of approximately 74 miles per hour, he saw Defendant go through a red light at an intersection without attempting to stop. Another vehicle came through the intersection from the south at the same time and collided with the Mercury. Defendant's vehicle spun to the north, up

2

onto a sidewalk and into a yard, struck a tree, and became tangled with a fence. The other vehicle spun eastbound, rolled a bit south, and came to rest against the curb.

Sergeant Anderson saw Defendant inside his vehicle trying to get out through the front passenger door. When Defendant saw Sergeant Anderson he tried to go back into the vehicle. Sergeant Anderson was able to put one handcuff on Defendant, and backup officers arrived and helped get Defendant out of the vehicle. Sergeant Anderson and some other officers went to the other vehicle and saw two women, neither of whom were moving. The driver, Pierra Hathaway (Hathaway), was hanging out of the driver's side door where the window was broken. Sergeant Anderson did not have any contact with the passenger, Shawnte Champ (Champ).

Hathaway's mother, Maria Fonville (Fonville), testified at Defendant's trial that she received a call from the hospital that night regarding her daughter. Fonville went to the hospital and found Hathaway in a coma with a bolt driven into her brain. Hathaway was in a coma for three weeks, and her condition at the time of trial was that she had sustained a spinal cord injury and brain damage, leaving her with the cognitive ability of a 10-year-old. At the time of trial, Hathaway had to use a walker to get around, and she was no longer able to take care of her two children or provide any income for her family as she had previously. At trial, Champ testified that she was not able to remember the moment of impact, but she testified that she suffered a lacerated spleen, a broken wrist, a broken jaw, and head injuries because of the accident.

The trial court found Defendant guilty in Counts I and III of second-degree assault, one related to Hathaway and one related to Champ, for which the court sentenced Defendant to concurrent terms of 15 years' imprisonment. The trial court also found

3

Defendant guilty in Counts II and IV of the accompanying charges of armed criminal action. The trial court sentenced Defendant to 15 years' imprisonment for each, Count IV to be served concurrently with all of the other counts, and Count III to be served consecutively. Finally, the trial court found Defendant guilty in Count V of resisting arrest and in Count VI of driving while revoked, for which the trial court sentenced Defendant to concurrent terms of seven years and one year, respectively, for a total sentence of 30 years. This appeal follows.

## Discussion

Defendant raises four points on appeal. First, he argues the trial court erred in finding him guilty of two counts of second-degree assault because the charges arose out of one act, and thus his conviction of more than one charge of assault and the accompanying charge of armed criminal action violates his right to freedom from double jeopardy. In Point II, Defendant argues that the trial court erred in convicting him of all counts of second-degree assault and armed criminal action because the evidence at trial did not support the charging document's language describing the collision. In Points III and IV, Defendant argues that there was insufficient evidence to convict him of each count of assault, and thereby each accompanying count of armed criminal action, regarding the issue of whether the collision caused the injuries to each victim. We discuss each in turn.

## Point I

Defendant argues that the trial court erred in convicting him of two counts of second-degree assault arising from one criminal act, thus violating double jeopardy. We disagree.

4

Defendant raises this claim for the first time on appeal. The protection against double jeopardy is a constitutional right addressing the power of the State to bring a charge against an accused. State v. Neher, 213 S.W.3d 44, 48 (Mo. banc 2007). In order to preserve a constitutional claim for review, it must be raised at the earliest opportunity. State v. Horton, 325 S.W.3d 474, 477 (Mo. App. E.D. 2010). However, if a claim of double jeopardy can be determined from the face of the record, it is entitled to plain error review upon appeal. Neher, 213 S.W.3d at 48. Here, the record does not facially reveal any such error.

One of the protections afforded by the double jeopardy clause in the Fifth Amendment to the United States Constitution is a protection from "multiple punishments for the same offense." State v. Hardin, 429 S.W.3d 417, 421 (Mo. banc 2014). In this respect, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983)); see also State v. Walker, 352 S.W.3d 385, 387 (Mo. App. E.D. 2011) (Missouri follows separate offense rule). Thus, the first step is to look to the statute under which Defendant was charged and convicted. State v. Porter, 464 S.W.3d 250, 255 (Mo. App. E.D. 2015).

Here, Defendant was convicted of second-degree assault under Section 565.060, RSMo. (Supp. 2006), which states the following:

> 1. A person commits the crime of assault in the second degree if he:
> . . .
> (3) Recklessly causes serious physical injury to another person[.]

5

The statute defines assault as causing injury to another *person,* in the singular. Thus, the plain language indicates that an assault on several persons would support separate charges of assault against each victim.

The Missouri Supreme Court considered a similar issue in State v. Smith, 456 S.W.3d 849 (Mo. banc 2015). There, the defendant had fired a gun three or four times at a person who was running away from him, missing that person but hitting and killing another person nearby. Id. at 851. The defendant was convicted of first-degree murder for the victim he had killed and first-degree assault for the person the defendant had shot at but had not injured. Id. In concluding that the defendant's freedom from double jeopardy was not violated by the two convictions, the Missouri Supreme Court reasoned, "[w]hen the same conduct results in harm to two or more victims, double jeopardy is not violated if a defendant is convicted for the harm to each victim." Id. at 853.

The Smith Court relied on a previous Missouri Supreme Court case finding no double jeopardy violation in a defendant's convictions of three separate counts of manslaughter where the defendant had killed three persons in an automobile accident. Id. (citing State v. Whitley, 382 S.W.2d 665, 667 (Mo. 1964)). The Whitley Court had stated that "[t]he gravamen of the offense is killing a human being, and the statute by its terms contemplates that there shall be as many offenses as there are human beings killed, whether by one or several acts." 382 S.W.2d at 667, quoted in Smith, 456 S.W.3d at 853; see also State v. Bowles, 754 S.W.2d 902, 908 ("The double jeopardy doctrine is directed to the identity of the offense, and not to the act").

This analysis applies equally in the present case, and in fact this Court has found it applies in the context of multiple assaults arising from one act by the defendant. In State

6

v. Bowles, this Court explained that "[t]he overwhelming weight of authority holds that a single act of assault by the defendant which affects two or more persons constitutes multiple offenses." 754 S.W.2d at 911 (citing authority).[2] Here, while Defendant committed one act, it resulted in harm to two different persons. His convictions for second-degree assault for each victim do not offend either the applicable statute or Defendant's constitutional protection from double jeopardy.[3] Point denied.

## Point II

In Point II, Defendant argues that there was insufficient evidence supporting his convictions in Counts I and III, and therefore in the accompanying Counts II and IV for armed criminal action, because the evidence at trial did not support the crimes as charged in the indictment in that there was no evidence he "struck" the victims' vehicle with his vehicle. We disagree.

As a threshold matter, Defendant's argument that there was insufficient evidence to convict him of the crime as charged in the indictment is not the same as arguing there was insufficient evidence at trial that he committed the crime of second-degree assault. See State v. Nelson, 334 S.W.3d 189, 197 (Mo. App. W.D. 2011). This is essentially a claim of variance between the evidence at trial and the charging document, to which Defendant failed to object at trial or include in his motion for new trial. See id.

---

[2] The statute at issue in Bowles was for third-degree assault, committed when a person "recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person." 754 S.W.2d at 909 (quoting Section 565.070.1(4), RSMo. (1986)). While Defendant argues for a different double jeopardy analysis where the mental state is recklessness, as for second-degree assault here, Bowles contradicts this argument, and we find no legal authority in support of Defendant's argument.

[3] Defendant had also contested his convictions in Counts II and IV of armed criminal action in this point, as one count of armed criminal action accompanied each count of second-degree assault. Because we find no error in Defendant's two convictions of second-degree assault, there is similarly no error present in his accompanying convictions for armed criminal action.

7

While we may review unpreserved errors for plain error, such review is discretionary and involves a two-step process. First, we determine whether Defendant's claim of error facially establishes substantial grounds to believe that manifest injustice or a miscarriage of justice has resulted, and if no facial grounds exists, we will decline to review the claim. Id. (quoting State v. Barnes, 312 S.W.3d 442, 443 (Mo. App. S.D. 2010)). If we do find such an error, then we proceed to the second step to determine whether manifest injustice or a miscarriage of justice actually occurred. Id.

Here, the indictment in Counts I and III stated that Defendant "recklessly caused serious physical injury . . . by running a red light and striking [the] car [containing victims] with his car at a high rate of speed." However, Defendant argues, the evidence at trial showed not that Defendant struck the victims' car with his car, but rather as Defendant proceeded through the intersection, the victims' car actually struck his car.

"The purpose of an indictment is to enable the accused to make his defense and to enable him to assert double jeopardy in bar of a further prosecution." Nelson, 334 S.W.3d at 197. So long as the indictment fulfilled this purpose, "any description that does appear in the indictment is . . . surplusage and cannot affect the outcome of the trial." Id. (quoting State v. Dayton, 535 S.W.2d 469, 479 (Mo. App. 1976)). "The State is not required to prove surplus language in the [indictment]." Nelson, 334 S.W.3d at 197 (citing State v. Collis, 849 S.W.2d 660, 663 (Mo. App. W.D. 1993)).

Here, Section 565.060 required evidence that Defendant recklessly caused serious physical injury to another person, and these elements were present in the language of the indictment. In order to show Defendant was prejudiced by any variance between the indictment and the evidence as to which vehicle struck the other, he had to show some

8

impairment to his defense. See Nelson, 334 S.W.3d at 197 (citing State v. Barnes, 312 S.W.3d 442, 443 (Mo. App. S.D. 2010)).

Defendant fails to point out any way his defense was impaired by the variance here. The indictment charged in Counts I and III that he recklessly caused serious physical injury to another person. The trial court was not required to find the specific fact that Defendant's vehicle struck the victims' vehicle; only that the Defendant recklessly caused serious physical injury. There is no error, plain or otherwise, in the trial court's judgment despite the variance here. Point denied.

## Points III and IV

In Point III, Defendant argues that the trial court erred in convicting Defendant of second-degree assault and the accompanying charge of armed criminal action in Counts I and II because there was insufficient evidence from which the court could find that the car accident was the cause of Hathaway's injuries. In Point IV, Defendant makes a similar claim, arguing that the trial court erred in convicting him of Counts III and IV because there was insufficient evidence showing the car accident caused injuries to Champ. Given the similarity of these arguments, we discuss them together.

In reviewing a challenge to the sufficiency of the evidence supporting a conviction, we do not re-weigh the evidence, but rather we "accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore all contrary evidence and inferences." State v. Latall, 271 S.W.3d 561, 566 (Mo. banc 2008) (quoting State v. Reed, 181 S.W.3d 567, 569 (Mo. banc 2006)). We ask "only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." Latall, 271 S.W.3d at 566.

9

Here, Defendant disputes the element of causation with respect to both Hathaway and Champ. To prove this element of second-degree assault, the State had to prove that Defendant's unlawful act proximately caused the victims' injuries. State v. Burton, 370 S.W.3d 926, 931 (Mo. App. E.D. 2012) (citing State v. Toran, 878 S.W.2d 913, 914 (Mo. App. E.D. 1994)). Defendant argues that though there was evidence of injury to each victim, the State failed to produce sufficient substantial evidence proving that the car accident was the proximate cause of these injuries. We disagree.

The entire car chase and resulting collision were recorded by a dashboard camera attached to Sergeant Anderson's police vehicle. The trial court viewed the video of the collision and also received into evidence photographs showing that the driver's side of the victims' vehicle was demolished. Regarding Hathaway, Sergeant Anderson testified that he observed her hanging out of the broken driver's side window of the car. Hathaway's mother testified that she went to the hospital within a few hours of the accident and saw her daughter in a coma, "fighting for her life with a bolt driven into her brain." Fonville further testified that prior to the accident, Hathaway had been able to care for her children and work to provide an income for her family, but she is no longer able to do either since the accident.

We find this sufficient evidence from which the trier of fact could have found the element of causation beyond a reasonable doubt. Defendant argues that the lack of any expert testimony on the issue of causation of Hathaway's injuries or any testimony regarding the precise timing of Hathaway's injuries made the State's case insufficient, but we disagree. There is no requirement that the State produce expert testimony; rather, the State must produce sufficient substantial evidence from which the trier of fact can find the

10

elements beyond a reasonable doubt. Here, the trial court could reasonably infer from the evidence that Hathaway's injuries were caused by the collision.

Regarding Champ, she testified directly about her injuries and that they resulted from the collision. She also identified photographs of her injuries, which the trial court received into evidence, and she stated, "These are my injuries due to the accident." As the trier of fact in this case, the trial court was free to believe or disbelieve this testimony. See State v. Williams, 277 S.W.3d 848, 853 (Mo. App. E.D. 2009). "[T]his Court should not act as a 'super juror' with veto powers but should give great deference to the trier of fact." Id. at 852. Our task is to determine only whether this testimony was sufficient evidence from which the trial court could find that Defendant proximately caused Champ's injuries, and we find that it was. Points III and IV denied.

## Conclusion

The trial court did not violate Movant's freedom from double jeopardy by convicting Movant of two counts of second-degree assault where Movant caused injury to two separate victims by one act. Additionally, there was sufficient evidence on the record from which the trial court could find Movant guilty beyond a reasonable doubt of each count of second-degree assault. We affirm.

_____
Gary M. Gaertner, Jr., Judge

James M. Dowd, P. J., concurs.
Kurt S. Odenwald, J., concurs.

11