Paul C. Wilson, Judge, dissenting
How little is too little? This question is devilishly difficult when raised, as it is here, in the context of whether the evidence in a criminal case supports the giving of a self-defense instruction requested by the defendant. To be sure, there was very little evidence of self-defense in this case, and Bruner's version of the facts is distinctly unconvincing. But the question of what is believable and what is not is for the jury, not for the trial court or for this Court. It is difficult to articulate precisely where the line is in these cases, but I believe the Court's decision in this case steps across it. Accordingly, I respectfully dissent.
Section 563.031.5, RSMo,[1] provides, "The defendant shall have the burden of injecting the issue" of self-defense. Section 556.051 explains:
When the phrase "The defendant shall have the burden of injecting the issue " is used in the code, it means
(1) The issue referred to is not submitted to the trier of fact unless supported by evidence; and
(2) If the issue is submitted to the trier of fact any reasonable doubt on the issue requires a finding for the defendant on that issue.
§ 556.051 (emphasis in original).
Two readings of section 556.051(1) are plausible. First, it is possible to conclude the requirement in section 556.051(1) that the issue of self-defense should not be submitted to the jury unless it is "supported by the evidence" means only what the phrase "supported by the evidence" usually means, i.e., that the evidence must be sufficient for a reasonable juror to believe the defendant acted in self-defense. In other words, section 556.051(1) could be construed so that the question of submissibility is decided as if the defendant had the burden of proof on self-defense. But this Court has never construed section 556.051(1) this way and does not purport to do so now.
*540 Even though it is clear this Court does not now construe (and never has construed) section 556.051(1) as though-for purposes of submissibility only-the defendant had the burden of proving self-defense, this Court's decisions construing section 556.051(1) are far less clear about what the phrase "supported by the evidence" actually means and, more importantly, how it is to be applied. The answer given by the Court today (and in its recent cases on the subject) is that there must be "substantial evidence" of self-defense. State v. Smith 456 S.W.3d 849, 852 (Mo. banc 2015). Substantial evidence means "any theory of innocence ... however improbable that theory may seem, so long as the most favorable construction of the evidence supports it." State v. Kinard , 245 S.W.2d 890, 893 (Mo. 1952) ; see also State v. Avery , 120 S.W.3d 196, 200 (Mo. banc 2003) (" 'Substantial evidence' is evidence putting a matter in issue."); State v. Stallings , 326 Mo. 1037, 33 S.W.2d 914, 917 (Mo. 1930) (defendant is entitled to an instruction on "any theory of the case which his evidence tended to establish"). In determining whether a refusal to submit an instruction was error, "the evidence is viewed in the light most favorable to the defendant and 'the theory propounded by the defendant.' " State v. Westfall , 75 S.W.3d 278, 280 (Mo banc 2002). As part of viewing the evidence in the light most favorable to the defendant, courts must disregard all contrary evidence and reject all inferences that do not support the claim of lawful self-defense. Id. at 281.
If this "substantial evidence" test sounds familiar, it should. It is the same test that would be applied if section 556.051(1) were interpreted-at least for purposes of determining whether a self-defense instruction should be given-as though the defendant had the burden of proof on whether he acted in self-defense. Qualifying the word "evidence" with the word "substantial" does not change the analysis any more than the qualified standards of "any evidence" or "a scintilla of evidence." As long as the focus of the analysis is on whether the evidence establishes the presence of self-defense, the Court in effect is applying a construction of section 556.051(1) that it has never adopted.
The other-and I believe proper-reading is to keep section 556.051(2) in mind when construing and applying section 556.051(1). Section 556.051(2) requires the state to prove beyond a reasonable doubt that self-defense was not present . Therefore, when applying section 556.051(1), the question should be whether there is a basis in the evidence for a reasonable doubt regarding the issue on which the state bears the burden of proof, i.e., that self-defense was not present. This construction, alone, is faithful to the language of section 556.051(1) and section 556.051(2).
Admittedly, this is a fine distinction, but it is one that can and should be drawn.[2] Doing so emphasizes that doubts as to whether to instruct on self-defense "should be resolved in favor of including the instruction, leaving it to the jury to decide."
*541 State v. Derenzy, 89 S.W.3d 472, 474-75 (Mo. banc 2002) (addressing requests for lesser included offense instructions). Failing to do so, on the other hand, risks having trial and appellate courts usurp the jury's role as factfinder.
This does not mean a self-defense instruction should be given every time the defendant requests it. Section 556.051(1)-even construed and applied in light of section 556.051(2)-neither requires nor allows this. No matter how favorably the evidence is viewed, there will be cases in which there simply is no evidence of self-defense at all.[3] For example, if the only evidence is that the defendant and the victim were unacquainted and the defendant-acting for hire-shot the victim in the back of the head with a rifle at long range, there is no suggestion of self-defense and certainly no basis in the evidence for a reasonable doubt that the defendant might have acted in self-defense.[4] As a result, the instruction should not be given in such a case.
These "no evidence" cases, however, are not the only (or even the primary) source of difficulty in this area. There is a second category of cases, i.e., the "very little evidence" cases. Focusing on whether there is a basis in the evidence for the jury to entertain a reasonable doubt as to the state's burden to prove the defendant did not act in self-defense helps resolve this second category of cases because the applicable standard of review permits the court to consider only the evidence and inferences that support such doubt and instructs the court to ignore all evidence and inferences that do not. In such cases, the requirements of section 556.051(1) are satisfied-especially when construed in light of section 556.051(2)-and the instruction must be given. The present case belongs in this latter category.
There can be little doubt in this case that a juror could entertain a reasonable doubt as to self-defense if the only evidence and only reasonable inferences were: (a) Bruner was attempting to address his wife; (b) Moore (significantly larger and stronger than Bruner) repeatedly confronted Bruner and (with a concrete step exacerbating his height advantage) repeatedly backed Bruner away until Bruner could back away no further; (c) Moore threatened to cut Bruner's throat; (d) Moore then moved his arm *542 toward Bruner in an effort to grab him and could carry out the threat to cut Bruner's throat; and (e) Bruner pulled his gun, which he brought solely to defend himself if necessary, and shot Moore. Of course, as the principal opinion points out, this is not all the evidence in the case and there are other reasonable-perhaps far more reasonable-inferences to be drawn. But the standard of review requires that all of the contrary evidence and inferences must be ignored, and that only the evidence and reasonable inferences supporting the giving of the instruction may be considered.
For example, the principal opinion lingers on the inconsistencies between Bruner's claim of acute stress disorder and his claim of self-defense. This inconsistency, however, disappears when such contrary evidence is ignored, as the standard of review instructs it must be. More importantly, the principal opinion holds the evidence supports a finding that Bruner-subjectively and reasonably-feared only Moore's "unwanted or offensive contact," not that Moore was about to employ sufficient force to cause serious injury or death. This conclusion ignores-or at least minimizes-the threat Moore had just made.
Moore stated: "I'm not from here mother f* *ker, I'll have your throat slit in two hours." When Bruner asked why Moore was threatening him, Moore replied: "I don't play these redneck games. ... You don't know who the f* *k you are messing with." If Moore meant he would find some third party to cut Bruner's throat two hours in the future, the principal opinion is correct because-like the hypothetical in footnote 4 above-there is no basis in the evidence for any reasonable doubt as to whether Bruner subjectively and reasonably believed Moore's use of deadly force was imminent.
But why must the jury understand Moore's threat this way? A faithful application of the standard of review requires this Court to draw the inference that Moore meant he, personally, was going to cut Bruner's throat[5] and would do so sometime within the next two hours, including immediately.[6] This is not the only reasonable inference the evidence would support, but it is one of them-and the *543 only one permitted by the applicable standard of review. With that inference, there is a basis in the evidence for the jury to entertain a reasonable doubt as to whether the state succeeded in proving Bruner did not act in self-defense. Therefore, under section 556.051(1), the instruction should have been given. That there are other inferences-even more compelling inferences-negating such doubts is irrelevant under the applicable standard of review.[7]
The principal opinion holds, for the first time ever, that the standard of viewing the evidence in the "light most favorable to the defendant" does not-in the circumstance of determining whether a self-defense instruction should be given-require the court to give the defendant the benefit of all reasonable inferences and to disregard all contrary evidence. O p. at 534n.2. The principal opinion offers no support for this, nor justifies why the phrase "light most favorable to the defendant" means less in the context of whether a self-defense instruction should be given than it does when deciding other questions of submissibility,[8] determining whether the evidence is sufficient to support a verdict,[9] and reviewing the denial of a motion for directed verdict or JNOV.[10]
*544 If, when viewing the evidence in the "light most favorable to the defendant," courts are not required to ignore all evidence to the contrary, then courts inevitably will begin to weigh the evidence and engage in credibility determinations as the principal opinion does in this case. Doing so runs afoul of the well-settled principle that courts "cannot weigh the evidence in a criminal case." State v. Hill, 328 S.W.2d 656, 659 (Mo. 1959). If the jury truly is entitled to "disbelieve all or any part of the evidence and refuse to draw needed inferences," as this Court stated in Jackson , 433 S.W.3d at 399, and numerous other cases, then legal determinations as to what questions should and should not be submitted to the jury must be made without usurping that prerogative. Instead, they must be made only by viewing the evidence in "the light most favorable to the defendant," and this requires granting the defendant all reasonable inferences and disregarding all contrary evidence. That is what the "light most favorable to the defendant" means. This Court has never held that "viewing the evidence in the light most favorable to the defendant" was a standard of review separate and distinct from "ignoring all reasonable inferences and evidence to the contrary," and it is error for the principal opinion to do so now.
Conclusion
It is easy to conclude, when viewing all of the evidence and drawing only the most likely and compelling inferences, that no reasonable juror would entertain a reasonable doubt as to whether Bruner acted in lawful self-defense in this case. But that is not the question. Instead, even (and, perhaps, especially) in the thinnest of cases, section 556.051(1) and the applicable standard of review leave such questions to the jury. Accordingly, I would vacate Bruner's convictions and remand for a new trial.

All statutory references are to RSMo Supp. 2013, unless otherwise noted.

In State v. Jackson , 433 S.W.3d 390 (Mo. banc 2014), this Court held there always is a basis in the evidence to acquit a defendant because the state bears the burden of proof beyond a reasonable doubt. Id. at 400 ("no evidence ever proves an element of a criminal case until all 12 jurors believe it, and no inference ever is drawn in a criminal case until all 12 jurors draw it") (emphasis in original). But Jackson does not apply here. Jackson dealt with the elements of a crime and the absence of self-defense (or other justification) is not an element of the crime of first-degree murder set forth in section 565.020. Neither due process nor the right to jury trial forbids placing the burden of production (and, perhaps, even proof) on the defendant regarding special negatives such as self-defense. Patterson v. New York , 432 U.S. 197, 212-14, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

See State v. Hyland , 144 Mo. 302, 46 S.W. 195, 197 (1898) (trial court correctly denied defendant's request for self-defense instruction because there "was not a scintilla of evidence tending to show any assault on defendant by deceased, nor the slightest reason why defendant should have apprehended any design upon the part of deceased to kill him, or inflict any bodily harm, previous to the deadly assault which caused his death"); see also State v. Hicks , 178 Mo. 433, 77 S.W. 539, 542 (Mo. banc 1903) (trial court properly denied defendant's request for self-defense instruction because "[t]here was no evidence whatever of a difficulty or controversy between defendant and deceased at the time of the homicide, or that defendant was acting in the defense of his person when he shot and killed deceased, or anything else that would have authorized such an instruction as contended for").

There also are cases in which the only evidence of self-defense seems to negate that defense. For example, if the only evidence on the question of self-defense is that the victim threatened "to cut defendant's throat two weeks from Thursday," one could view that evidence as precluding any reasonable belief of imminent harm. But, if the standard of review is faithfully applied, such cases are simply "no evidence" cases like those above. The victim's threat that he would kill the defendant two weeks later does not support self-defense and, like all other contrary evidence, must be ignored. Once ignored, there is no evidence of an imminent threat and, therefore, no basis in the evidence for any reasonable doubt on that issue and the instruction should not be given.

Further evidence that the principal opinion fails to apply the standard of review faithfully is found in the principal opinion's reliance on Mr. Bruner's affirmative testimony that "he did not think Mr. Moore had a weapon." O p. at 538. But Westfall clearly provides that "an instruction on self-defense must be given when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony ." Westfall , 75 S.W.3d at 281 (emphasis added). The principal opinion claims this statement in Westfall "simply reflects what this Court held in Avery , that 'self-defense is submissible, even where the defendant testifies that the killing was an accident, if the inconsistent evidence of self-defense is offered by the State or by defendant through the testimony of a third party.' " O p. at 534 n.2. Notably, however, the defendant in Westfall did not testify that the killing was an accident and then request a self-defense instruction, and nothing in Westfall suggests that the requirement to disregard contrary evidence even when offered by the defendant applies only to such situations.

The principal opinion is distracted, in my view, by a misconception that Bruner did not testify he understood Moore's threat this way. In fact, Bruner testified he "didn't know when [Moore] was going to cut my throat" because "within two hours that's any time there." But even if Bruner had testified that he understood Moore to be threatening harm remote in time and uncertain to occur, that evidence must be disregarded under the applicable standard of review. Westfall , 75 S.W.3d at 281 ; see also Jackson , 433 S.W.3d at 399 ("jury may accept part of a witness's testimony, but disbelieve other parts"). The result is not a complete absence of evidence on the question of whether Bruner had a subjective fear of imminent deadly force, however, as such a belief can be inferred from his actions. The fact that the jury is not likely to pick and choose from among the evidence in this way is irrelevant to the question of submissibility. The applicable standard of review requires courts to employ precisely that approach when deciding which questions the jury will be given to decide.

The facts in Smith are similar to those in this case, but distinguishable. 456 S.W.3d 849. There, the defendant admitted it was not until the victim had "run away and stopped between two dumpsters did he [ (Smith) ] 'figure' [the victim] was looking for a gun." Id. at 852. As explained above, a faithful application of the standard of review should have led the Court to ignore that evidence. Nevertheless, the Court reached the proper result because once that evidence is ignored, as it should have been, there simply was no basis in the evidence for any reasonable doubt that Smith was the initial aggressor or that Smith had no subjective and reasonable belief that the victim's use of deadly force was imminent. Here, there was a basis in the evidence (if, but only if, all contrary evidence and inferences are ignored) for reasonable doubt as to these issues.

See, e.g. , Howard v. City of Kansas City , 332 S.W.3d 772, 788 (Mo. banc 2011) (in determining whether to submit the question of punitive damages in a civil case, "we view the evidence and all reasonable inferences in the light most favorable to submissibility") (quotation marks and citations omitted).

The standard of review for a sufficiency of the evidence claim necessitates that all evidence be viewed "in the light most favorable to the verdict." State v. Weems , 840 S.W.2d 222, 228 (Mo. banc 1992). "All evidence supporting the verdict is regarded as true and all contrary evidence disregarded." Id. ; see also State v. Adkins, 800 S.W.2d 28, 30 (Mo. App. 1990) ("In a determination of the sufficiency of the evidence to support a conviction, all evidence tending to support the verdict must be considered as true, contrary evidence disregarded, and every reasonable inference supporting the verdict indulged."); State v. Belton , 153 S.W.3d 307, 309 (Mo. banc 2005) ("The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict.").

The same standard of review is also used when an appellate court reviews the overruling of motions for a directed verdict and JNOV. In determining whether the trial court erred in overruling a motion for a directed verdict or motion for JNOV, "this Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." Fleshner v. Pepose Vision Inst., P.C. , 304 S.W.3d 81, 95 (Mo. banc 2010). In doing so, the "[e]vidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." Id. ; see also Keveney v. Mo. Military Acad. , 304 S.W.3d 98, 104 (Mo. banc 2010) ("Conflicting evidence and inferences are disregarded."); Sollenberger v. Kansas City Pub. Serv. Co. , 356 Mo. 454, 202 S.W.2d 25, 29 (Mo. banc 1947) ("But when a verdict is for the plaintiff we take the plaintiff's evidence as true when not entirely unreasonable or opposed to physical laws and give plaintiff the benefit of all favorable inferences arising from all the evidence, and disregard defendant's evidence where it conflicts with plaintiff's or fails to strengthen plaintiff's case.").