

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD87042** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **JUNE 17, 2025** |
| **RODRIGUEZ M. HARRIS, JR.,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Cotton Walker, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

Rodriguez M. Harris, Jr. appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court"), convicting him, after a bench trial, of:  Count I, Assault in the Second Degree with a special victim, Section 565.052;[1] Count II, Armed Criminal Action, Section 571.015; and Count III, Resisting Arrest, Section 575.150.  On appeal, Harris alleges that the trial court erred in entering judgment against him because the State failed to provide substantial evidence that he committed the offenses as charged in the amended information.  We affirm the judgment of the trial court.

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as updated by supplement.

**Factual and Procedural Background**

In the early morning of April 29, 2023, police were called to a residence in Cole County. When officers arrived at the residence, a younger man and an older woman, both of whom lived in the residence, stated that Harris was inside the residence, creating a disturbance and "acting crazy"; the woman wanted Harris to leave. The officers entered the residence and proceeded to the room Harris occupied. When the officers approached the room, Harris tried to close the bedroom door on the officers, but Sergeant 1[2] put his foot in the door so that he and Sergeant 2 could enter.

When the officers entered the room, Harris was sitting on a low sofa and appeared to be under the influence of some substance; he was sweating profusely and speaking incoherently. The officers ordered Harris to get on the ground, but he was uncooperative. Despite the officers ordering Harris not to touch anything, and specifically not to touch the knife which was located near him, he repeatedly rocked or lunged forward reaching toward the knife that was near his feet. After he reached for the knife again, one of the officers tased him. After tasing him, the officers were able to handcuff Harris and arrest him. Harris continued to resist Sergeant 1 and Sergeant 2, but two additional officers, who had arrived at the residence in the intervening time, were able to help carry Harris out of the residence and get him into a police vehicle. Harris continued to try to kick the officers as they removed him from the residence.

---

[2] Pursuant to Section 509.520 and the Operating Rules of our Missouri Supreme Court, we do not include the names of witnesses unless they are parties. The two law enforcement officers who were present during the relevant time both had the rank of Sergeant, and both had the same last initial, so this opinion will refer to them as Sergeant 1 and Sergeant 2, respectively.

At Harris's bench trial, Sergeant 1 and Sergeant 2 both testified, and the court was shown both officers' bodycam videos as well as still shots taken from the videos. Sergeant 2, who entered the room at the residence just behind Sergeant 1 on the night of Harris's arrest, testified that he was the one who first noticed the white knife on the floor and called it out to Sergeant 1. Sergeant 2 testified that he believed Harris "was attempting to cause Sergeant [1] serious physical injury." Sergeant 2 testified that, while Harris lunged or reached for the knife, he was tased before he was ever able to grab hold of the knife.

Sergeant 1's testimony was similar to that of Sergeant 2, but Sergeant 1 testified that he believed he saw Harris successfully pick up the knife, at least briefly. On cross-examination, Sergeant 1 acknowledged that the bodycam video never shows the knife in Harris's hand, so Sergeant 1 did not know "100 percent" whether Harris ever actually had the knife in his hand.

Harris did not adduce any evidence at trial.

At the close of the evidence, Harris argued, in support of his motion for acquittal:

> And, really, I think this boils down to who are you gonna believe, me or your lyin' eyes? So I would ask the Court to review the body camera footage to see whether or not these officers are credible. Because if Mr. Harris is not grabbing any knife—You know, the State's locked into the factual basis in the charge. They did not charge Mr. Harris with grabbing at a knife or grabbing near a knife or putting the officers in apprehension of physical injury. They charged him with aggressively grabbing a knife. If he has no knife—The charging basis does not set any difference between grabbing a knife, lunging forward, and physically fighting. The implication in Count I is that he grabbed a knife and lunged at the officers and physically fought. So they're not charging him with one, the Court can then pick and choose which one they want. Their Information that they are

3

locked into is that he committed all three acts, and that just isn't supported by the evidence.

The trial court denied the motion for acquittal and found Harris guilty on all counts. Harris was sentenced to ten years' imprisonment on Count I, five years' imprisonment on Count II, and three years' imprisonment on Count III, all to run concurrently. This appeal follows.

## Sufficiency of the Evidence

Harris's single point on appeal argues that the trial court erred in finding him guilty of assault in the second degree and the corresponding count of armed criminal action because "the State was required to prove beyond a reasonable doubt that Mr. Harris committed the exact act alleged in Count I as forming the basis for the offense; specifically that Mr. Harris 'grabbed the knife' and 'lunged toward' the officer who was closest to him at the time and alleged to be his target" and the State did not produce sufficient evidence that Harris actually grabbed the knife.

The State argues that we may review Harris's claim, if at all, only for plain error because his claim is not actually one for sufficiency of the evidence but is, rather, a claim for variance, and the variance issue was not preserved for appeal. We disagree. Harris's counsel clearly argued this very issue in support of his motion for acquittal, as the portion of the transcript quoted above establishes. Further, because this was a bench trial, there could be no variance between the charging document and the jury instructions because no jury instructions were involved.

4

However, even when the issue is preserved, as was the case in *State v. Smith*, decided by our Supreme Court, we disregard "surplus" language in the charging document that is unnecessary to a finding of guilt for a particular offense. Section 545.030.1(14); *State v. Smith*, 944 S.W.2d 901, 917 (Mo. banc 1997). In that case, "Smith never attacked the sufficiency of the indictment. His argument was that the State did not prove the cause of deaths *alleged in the indictment* beyond a reasonable doubt." *Id.* (emphasis added). The Court in *Smith* went on to look at the elements of the crime as set forth in the statute and review whether evidence of those elements was sufficient at trial, not whether the State produced sufficient evidence of the surplus allegations contained in the charging document. *Id.* "The exact nature of the mortal wound is not an element of the crime. Any description that does appear in the indictment is, therefore, surplusage and cannot affect the outcome of the trial." *Id. See also State v. Nelson*, 334 S.W.3d 189, 196 (Mo. App. W.D. 2011); *State v. Jackson*, 896 S.W.2d 77, 83 (Mo. App. W.D. 1995); *State v. Hartwein*, 648 S.W.3d 834, 847-48 (Mo. App. E.D. 2022); *State v. Edwards*, 510 S.W.3d 374, 379-80 (Mo. App. E.D. 2017).

As relevant to this case, Section 565.052.1(2) provides that "[a] person commits the offense of assault in the second degree if he or she . . . [a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument . . . ." The State alleged that Harris "attempted to cause serious physical injury to Confidential Victim [Sergeant 1] by aggressively grabbing a knife . . . ." The State did produce evidence that Harris rocked or lunged forward toward both

5

Sergeant 1 and to the knife and reached *for* the knife, which lay near his foot.[3]  And while Harris's counsel argued that he might have been reaching for the knife to hand it to the officers, there was also evidence that Harris continued to kick officers even after he had been restrained, so the trial court, as the finder of fact, could have properly inferred that Harris intended to injure Sergeant 1 with the knife.  The rest of the allegations in Count I of the amended information, which Harris argued the State failed to prove, were surplusage, and therefore, pursuant to section 545.030.1(14) and the above-cited case law, did not invalidate the charging document or affect the trial or other proceedings thereunder.

Harris's only argument with respect to the armed criminal action conviction (Count II) is that it was unsupported by substantial evidence in the same manner that the conviction for Count I was invalid, i.e., that the State did not prove every allegation in the amended information.  He did not argue that the State failed to prove the elements of armed criminal action as defined in Section 571.015.  Accordingly, we do not further address that issue.

Harris's Point on appeal is denied.

---

[3] Moreover, Sergeant 1 testified that he believed he saw Harris actually pick up the knife, and there were brief moments on the bodycam video where the knife and Harris's hand were not in view.

6

## Concurrent Sentences

Although Harris raised only a single point on appeal, the State's brief includes a "Point II" in which it argues that the trial court erred in ruling that Harris's sentences all run concurrently with each other. However, the State did not appeal or cross-appeal.

Section 547.200.2 allows the State to appeal a criminal case unless "the possible outcome of such an appeal would result in double jeopardy for the defendant." An issue of whether multiple sentences are ordered to be served concurrently or consecutively would not result in a double-jeopardy issue. And although the State did not object to Harris's concurrent sentences or otherwise raise this issue before the trial court, Rule 30.20 allows plain error review of even unpreserved errors respecting sentencing. The State could have directly appealed or cross-appealed alleging error in Harris's sentencing. It did not, and therefore the sentencing issue the State attempts to address in its "Point II" of its Respondent's brief is not before us. We decline to address the issue *sua sponte*.

## Conclusion

For the above-stated reasons, we affirm the judgment of the trial court.

_____
Gary D. Witt, Judge

All concur

7